**JANE GRUHN, et al..**

        **Plaintiffs,**                    **Case No. 2:07-cv-852**
                                        **JUDGE GREGORY L. FROST**
    **v.**                            **Magistrate Judge Norah McCann King**

**TWEEN BRANDS, INC., et al.,**

        **Defendants.**

**ALLISON ANDREWS, et al..**

        **Plaintiffs,**                    **Case No. 2:07-cv-894**
                                        **JUDGE GREGORY L. FROST**
    **v.**                            **Magistrate Judge Norah McCann King**

**TWEEN BRANDS, INC., et al.,**

        **Defendants.**

**JOHN SELFER, et al..**

        **Plaintiffs,**                    **Case No. 2:07-cv-925**
                                        **JUDGE GREGORY L. FROST**
    **v.**                            **Magistrate Judge Norah McCann King**

**TWEEN BRANDS, INC., et al.,**

        **Defendants.**

## OPINION AND ORDER

This consolidated securities litigation is before the Court for consideration of Defendants' motion to dismiss (Doc. # 40), Plaintiff's memorandum in opposition (Doc. # 47), and Defendants' reply memorandum (Doc. # 51).[1]  For the reasons that follow, this Court finds the motion to dismiss well taken.

### I.  Background

The consolidated cases constitute a securities class action headed by Lead Plaintiff, the Electrical Workers Pension Fund, Local 103, I.B.E.W. ("Electrical Pension Fund"), on behalf of all persons who purchased or otherwise acquired the common stock of Defendant Tween Brands, Inc. ("Tween Brands") between February 21, 2007, and August 21, 2007.  Tween Brands is in the business of selling apparel, footwear, and lifestyle and personal care products through two retail divisions, Limited Too and Justice.  The company's asserted market focus is on female customers between the ages of seven and fourteen.  Plaintiffs claim that during the stated class period, Defendants issued materially false and misleading statements regarding Tween Brands' business and prospects, which resulted in artificially inflated stock prices that have since fallen.

According to the amended consolidated complaint (Doc. # 35), Tween Brands added the Justice line of stores in 2004 in an effort to broaden its reach to its young customers.  The Justice stores were purportedly originally intended to feature similar but cheaper products in less expensive locations than the higher-end shopping malls in which Limited Too stores were located, without the two store brands competing against one another.  By February 21, 2007,

---

[1]  For ease of reference, the Court shall use only the docket numbers assigned to filings in Case No. 2:07-cv-852.  This Opinion and Order also applies to the corresponding filings made in the consolidated cases of 2:07-cv-894 and 2:07-cv-925.

however, there were 159 Justice stores and 563 Limited Too stores, some in the same locations. Plaintiffs assert that cannibalization of the customer base began to occur as "crossover customers" shopped at Justice instead of Limited Too and that although Tween Brands management was aware that Justice was pulling customers from Limited Too, management concealed this fact. Plaintiffs assert that Justice experienced growth in part by siphoning off customers from Limited Too, which was experiencing stagnating sales. According to the amended complaint, Defendant Michael W. Rayden, Tween Brands Chief Executive Officer and former President, was aware of data indicating the cannibalization of Limited Too by Justice (named after his daughter), but did not disclose this information to others, including members of his own company.

Plaintiffs allege that Tween Brands engaged in a number of promotional programs to bolster sales. One such program was Limited Too's "Too Buck" program in which during designated periods of the year, every Limited Too customer who spent $50.00 before sales tax received two $25.00 Too Bucks cards that could be used to purchase additional merchandise during a subsequent redemption period. Tween Brands ran this program twice a year, including during the back-to-school season, which followed the Christmas holiday season as the second largest shopping season. Customers would make purchases qualifying for Too Buck cards in summer and could later redeem the cards after the peak back-to-school shopping season had ended, with the purported net effect being that Tween Brands boosted sales by extending school shopping after children had returned to school. Plaintiffs assert that timing was critical to this program because back-to-school merchandise could be sold at a high margin prior to the redemption period, but selling such merchandise during the redemption period would yield lesser

profit because of redeemed cards.  In other words, miscalculating when to run the promotional periods could undercut profit margins and shorten the profitable back-to-school shopping season.

Such miscalculation occurred in 2007, according to Plaintiffs, when Defendant Paul C. Carbone, Tween Brands Chief Financial Officer, Senior Vice President, and Principal Accounting Officer, allegedly assumed control of the program and implemented a new system and procedures for the Too Buck program.  Despite being aware of problems with the promotion, various individuals at Tween Brand allegedly continued to meet with analysts and assure investors that the company was effectively executing the promotion, with the end result being projected 2007 earnings per share of between $2.15 and $2.25.  Tween Brands also failed to indicate that during this same period of time, Florida and Texas announced that they were moving their state sales tax holidays to later dates than in previous years; this change would also allegedly affect sales and the back-to-school promotion.

Plaintiffs allege that because Tween Brands miscalculated dates, the company sold their back-to-school merchandise at discounted prices that undercut profitability.  Plaintiffs also assert that because Tween Brands was essentially operating Justice as a separate company, the new division presented increasing overhead costs that resulted in Tween Brands' infrastructure/overhead costs increasing dramatically.  Despite these occurrences, Plaintiffs allege, Defendants issued materially false statements or failed to disclose adverse facts during the class period concerning Tween Brands' sales and earnings.

The amended complaint identifies a number of sources as containing these misleading statements.  For example, Tween Brands purportedly issued a February 21, 2007 press release reporting fourth quarter 2006 and fiscal year 2006 results that included projections for earnings

of $2.15 to $2.25 per share in 2007, as opposed to the 2006 earnings of $1.95 per share in 2006. In a February 21, 2007 conference call with securities analysts, media representatives, and investors hosted by Defendants Rayden, Carbone, and Tween Brands Chief Operating Officer, President, Secretary, and Treasurer Kenneth T. Stevens, the company representatives repeated the results and projections.

Following these announcements, Tween Brands stock rose from $35.11 per share on February 21, 2007, to $37.27 per share on February 22, 2007. On February 22 and February 23, 2007, Rayden sold 64,598 shares of Tween Brands stock for $2,392,070 million. This represented 17% of Rayden's holdings at that period in time.

On May 23, 2007, Tween Brands then issued a press release reporting first quarter 2007 results that included projections for second quarter 2007 and fiscal year 2007, with the latter a projection of $2.15 to $2.25 per share. On that same date, the company held a conference call with securities analysts, media representatives, and investors hosted by Rayden, Carbone, and Stevens in which they repeated and discussed the press release contents. Subsequently, on May 30, 2007, Carbone made comments at the FBR Growth Conference in which he restated the 2007 projections and minimized the effect of the alleged cannibalization.

Following this round of announcements, Tween Brands stock rose from $38.91 per share on May 22, 2007, to $43.53 per share on May 31, 2007. The amended complaint alleges that between June 8 and June 12, 2007, Rayden sold 153,683 shares of Tween Brands stock for $6,314,009 million. This represented 32% of Rayden's holdings at that period in time.

This same pattern of reiterating the positive forecasted results continued in June 2007 when senior Tween Brands management allegedly met with analysts to promote the company's

prospects. Plaintiffs argue that because of positive analyst reports, Tween Brands stock hit a high of $46.54 per share on July 6, 2007. On August 22, 2007, however, Tween Brands issued a press release reporting second quarter 2007 operating results and projecting third and fourth quarter results, with information on planned store growth. The results indicated decreasing Limited Too sales and a failure to meet other expectations, with the revised projected earnings now set at $1.80 to $1.95 per share. To explain the revised projections, the company cited underestimation of the effect of changed back-to-school dates, the change of the Texas and Florida sales tax holidays, and an overall decline in retail traffic and lower store transactions. Tween Brands stock fell by $11.00 per share that day, closing at $27.59 per share. In August 2008, Tween Brands announced that it was abandoning the Limited Too brand and would be converting approximately 560 Limited Too stores to Justice stores. By October 3, 2008, the date of the filing of the amended consolidated complaint, Tween Brands stock had fallen to $8.78 per share. (Doc. # 37.)

Plaintiffs, all purchasers of Tween Brands common stock, allege that Defendants' false and misleading statements resulted in artificially inflated stock prices that, following public revelation of the company's actual sales and business prospects, led to massive sales that devalued the stock to the detriment of the asserted class members. In the consolidated amended complaint, Plaintiffs assert claims for relief for (1) violation of § 10(b) of the Securities Exchange Act of 1934 ("the Act") and Securities and Exchange Commission Rule 10b-5 ("SEC Rule 10b-5") and (2) violation of § 20(a) of the Act. (Doc. # 37 ¶¶ 94-99.)

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether Plaintiffs have set forth a claim upon which this Court may grant relief. Under the United States Supreme Court's most recent articulation of the analytic standard involved in applying this rule, this Court must construe the amended consolidated complaint in favor of Plaintiffs, accept the factual allegations contained in the pleading as true, and determine whether Plaintiffs' factual allegations present plausible claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *Luckey v. Butler County*, No. 1:06cv123, 2007 WL 4561782, at *1 (S.D. Ohio Dec. 21, 2007) (characterizing *Bell Atlantic* as requiring that a complaint " 'state a claim to relief that is plausible on its face' " (quoting *In re OSB Antitrust Litigation*, No. 06-826, 2007 WL 2253419, at *2 (E.D. Pa. Aug. 3, 2007))). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) (explaining that "faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true"). To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 127 S. Ct. at 1974; *Assoc. of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). Thus, the factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp.*, 127 S. Ct. at 1964-65. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

### B. Analysis

The crux of Defendants' motion to dismiss is that Plaintiffs have failed to meet the

heightened pleading requirements not only of Federal Rule of Civil procedure 9(b), but also of the Private Securities Litigation Reform Act of 1995 ("PSLRA") in regard to their claim under § 10(b) of the Act and SEC Rule 10b-5. Because this first claim fails, Defendants argue, Plaintiffs' contingent § 20(a) control person claim also necessarily fails. The relevant provision of the PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). *See also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004) (noting statutory addition to Fed. R. Civ. P. 9(b)'s pleading with particularity requirements).

Defendants posit that Plaintiffs' case for securities fraud "is built on nothing more than generalized, unsupported hindsight allegations, insufficient under the PSLRA." (Doc. # 40, at 15.) Defendants reason that because their projections were forward-looking statements, Plaintiffs must establish actual knowledge of the falsity of the statements involved. But, Defendants assert, Plaintiffs' pleading consists only of generalized references to various reports as opposed to specific facts known to Defendants at the time the projections were made. Moreover, Defendants explain, there can be no scienter inferred from Rayden's stock sales because they were consistent with his normal trading pattern and routine stock sales do not present a strong inference of scienter. Rather than presenting evidence of fraud, Defendants conclude, the amended consolidated complaint indicates that their forward-looking statements were accompanied by meaningful cautionary statements so as to invoke the PSLRA's safe harbor protections.

The Court begins its analysis with the first count of the amended consolidated complaint, which asserts a claim for violation of § 10(b) of the Act and SEC Rule 10b-5, set forth at 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b), respectively.  Section 10(b) provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange–
>
> . . .
>
> [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).  Rule 10b-5, which implements § 10(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.  To establish violations of these anti-fraud provisions, Plaintiffs must show that Defendants (1) engaged in misrepresentations or omissions of material facts (2) made in connection with the offer, sale, or purchase of securities, (3) with scienter, or a wrongful state

of mind, on Defendants' part.[2]  *SEC v. George*, 426 F.3d 786, 792 (6th Cir.2005) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)).  The Sixth Circuit has explained that "[a] fact is material if a substantial likelihood exists that (1) a reasonable shareholder would consider the fact important in making his investment decision and (2) a reasonable shareholder would view the information as having significantly altered the total mix of information."  *Id.* (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)).

The United States Supreme Court has explained that "the term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud."  *Ernst & Ernst*, 425 U.S. at 193 n.12.  The Sixth Circuit has noted that "[s]cienter may be established by proof of recklessness–'highly unreasonable conduct which is an extreme departure from the standards of ordinary care.' "  *George*, 426 F.3d at 792 (quoting *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)).  The court of appeals has stated:

> Scienter is a necessary element of a 10b-5 claim.  To establish this element, the plaintiff must show that the defendant acted:
>
> with "actual intent to deceive, manipulate, or defraud" or severe recklessness, which is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it."

_____

[2]  The Sixth Circuit has also expressed the elements in more detail as follows:

The basic elements of a federal securities fraud action pursuant to Rule 10b-5 and Section 10(b) . . . are: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation.

*Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 917 (6th Cir. 2007) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)) (emphasis deleted).

*Platsis v. E.F. Hutton & Co., Inc.*, 946 F.2d 38, 40 (6th Cir. 1991) (quoting *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 889 (5th Cir. 1987)) (citations omitted).  The involvement of scienter in securities fraud cases can be tricky.  For example, when statements of present or historical facts are involved, a plaintiff "may satisfy the scienter pleading requirement 'by alleging facts giving rise to a strong inference of recklessness.' "  *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 568 (6th Cir. 2004) (quoting *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999)).  When unqualified forward-looking statements are involved, however, a plaintiff must establish that a defendant " 'had actual knowledge that the statements were false or misleading.' "  *Id.* (quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540, 547-48 (6th Cir. 2001) (en banc), *recognized as overruled in part on other grounds in Frank v. Dana Corp.*, 547 F.3d 564, 571 (6th Cir. 2008)).  *See also Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 572 (6th Cir. 2008) (noting that a plaintiff can overcome the safe harbor provision "if defendants had actual knowledge that [a material statement] was false or misleading" (quoting *Helwig*, 251 F.3d at 547-48)).  Appropriately qualified forward-looking statements introduce yet another twist in which state of mind becomes irrelevant.  The Sixth Circuit has summarized the law in this area as follows:

> There are three distinct scienter requirements for securities fraud actions, each of which depends on the type of statement that is being made, and, in the case of "forward-looking statements," whether that statement was material and accompanied by meaningful cautionary statements.  *See* 15 U.S.C. § 78u-5(c).  First, for "forward-looking statements" that are accompanied by meaningful cautionary language, the first prong of the safe harbor provided for in the PSLRA makes the state of mind irrelevant.  *See* 15 U.S.C. § 78u-5(c)(1)(A); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 803 (11th Cir. 1999).  In other words, if the statement qualifies as "forward-looking" and is accompanied by sufficient cautionary language, a defendant's statement is protected regardless of the actual state of mind.  Second, under the second prong of the safe harbor provision of the PSLRA, in the case of "forward-looking statements" that are not accompanied by

> meaningful cautionary language, actual knowledge of their false or misleading
> nature is required. *See* 15 U.S.C. § 78u-5(c)(1)(B); *see also Helwig v. Vencor,
> Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (*en banc*). Finally, for statements of
> present or historical fact, the state of mind required is recklessness. *Vencor*, 251
> F.3d at 552. Recklessness is defined as "highly unreasonable conduct which is an
> extreme departure from the standards of ordinary care. While the danger need not
> be known, it must at least be so obvious that any reasonable man would have
> known of it." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th
> Cir. 1979).

*Miller v. Champion Enterprises Inc.*, 346 F.3d 660, 672 (6th Cir. 2003).

Defendants argue that state of mind is not relevant given the forward-looking nature of

the appropriately qualified statements Plaintiffs target. (Doc. # 40, at 39.) Alternatively,

Defendants argue that Plaintiffs have failed to plead scienter sufficiently. Plaintiffs argue that

Defendants cannot take refuge in the PSLRA's safe harbor provision because Defendants made

the statements at issue with actual knowledge of their falsity.

Another judicial officer in the Northern District of Ohio has described the safe harbor

provision as follows:

> In securities fraud claims based on statements of present or historical fact, such as
> Plaintiff's claims in this case, scienter can be established by knowledge or
> recklessness. *PR Diamonds, Inc.*, 364 F.3d at 682. To the extent that Plaintiff
> alleges forward-looking statements, the PSLRA applies a different scienter
> requirement pursuant to its "safe harbor" provision. *Id.* at 681 n. 3. "Forward-
> looking statements include projections and estimates of a company's future
> economic performance, including statements related to revenues, earnings per
> share, income, dividends, capital expenditures, capital structure, and other
> financial items." *Id.* (citing 15 U.S.C. § 78u-5(i)(1)). With respect to forward-
> looking statements, state of mind is irrelevant if the statements are accompanied
> by meaningful cautionary language; otherwise, the required state of mind is actual
> knowledge. *Id.* (citing 15 U.S.C. § 78u-5(c)(1)(A)(B)).

*In re Ferro Corp. Sec. Litig.*, Nos. 1:04CV1440 & 1:04CV1589, 2007 WL 1691358, at *11

(N.D. Ohio June 11, 2007).

In the instant case, this Court sets aside extended discussion of the issues of whether the

alleged fraud was pled with particularity (which it was not under the *Ferro* analysis, *id.* at *18-20) and the safe harbor provision for the sake of engaging in no more discussion than is needed. To the extent that the statements at issue can be said to constitute forward-looking statements, they are either appropriately qualified so as to afford Defendants safe harbor protection or, if not sufficiently qualified, Plaintiffs have failed to plead sufficiently facts that would give rise to an inference of actual knowledge. And to the extent that the statements can be justly viewed as mixing forward-looking statements with present or historical facts, Plaintiffs have not sufficiently alleged facts from which this Court can find the requisite scienter. If Plaintiffs have not satisfactorily pled a reckless disregard by Defendants of the falsity of their statements, the lesser degree of scienter, they could not prevail by arguing that they have pled sufficiently actual knowledge, a higher degree of scienter.

Thus, even if the Court were to conclude that Count One presents an arguable claim of misrepresentation, the amended consolidated complaint nonetheless fails to set forth a plausible claim because it does not plead sufficiently the requisite scienter on the part of Defendants. The Sixth Circuit has explained that in addressing the element of scienter, a court's task is "to determine whether the Complaint alleges facts that, if true, would, by forming the basis for a strong inference, 'convince a reasonable person that the defendant knew a statement was false or misleading.' " *Brown*, 481 F.3d at 917 (quoting *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 683 (6th Cir. 2005)). Thus, to assess whether Plaintiffs have adequately alleged scienter, this Court must employ a "totality of the circumstances" test that requires consideration of factors such as

> (1) insider trading at a suspicious time or in an unusual amount; (2) divergence
> between internal reports and external statements on the same subject; (3)

13

closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Id. See also Helwig*, 251 F.3d at 552. Application of this test to all of the relevant information *sub judice* results in the conclusion that the amended consolidated complaint fails to allege scienter sufficiently.[3] The factual allegations pled, viewed cumulatively, suggest probable negligence (falling short of recklessness) and raise some limited inference of scienter. But the former does not fall within the claim pled, and the latter simply does not rise to the required level of a *strong*, or powerful, inference of scienter.

Plaintiffs' amended consolidated complaint devotes a considerable portion of its text to presenting allegations that Defendants knew that Tween Brands' projections were false, primarily by repeatedly emphasizing that Rayden, Carbone, and Stevens had access to extensive company data on sales, forecasted sales, and markdowns, including daily and weekly reports and market analysis reports. *See* Doc. # 37 ¶¶ 4, 5, 7, 8, 28, 35, 36, 47, 48, 49, 72, 73, 74, 75, 76, 77,

---

[3] The United States Supreme Court has emphasized the scope of the inquiry involved:

[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.

*Tellabs, Inc.*, 127 S. Ct. at 2509.

78, 79, 81. But allegations that Defendants " 'could regularly track' sales data contradicting the [targeted] forecasts[s], accompanied by 'a general assertion about what [plaintiffs] think the data showed,' is insufficient to plead scienter without 'hard numbers or other specific information.' " *In re Juniper Networks, Inc.*, 158 F. App'x 899, 900 (9th Cir. 2005) (quoting *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004)). *See also In re Diebold Sec. Litig.*, No. 5:05CV2873, 2008 WL 3927467, at *5-6 (N.D. Ohio Aug. 22, 2008); *In re Ferro Corp.*, 2007 WL 1691358, at *16. Plaintiffs' assumptions and conclusions therefore do not present the requisite strong inference of scienter. *See* 15 U.S.C. § 78u-4(b)(2) ("In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").

Nor does the amended consolidated complaint create a strong inference of scienter based on Rayden's stock sales. As noted, Rayden sold two blocks of stock during the period at issue, with the larger sale constituting 32% of the Tween Brands stock he held at that time. The inference Plaintiffs ask this Court to draw is that Rayden knew that he and his company were making false statements to inflate the stock and to enable him to sell a large percentage of his holdings to reap financial windfalls. But Plaintiffs attempt to imply too much without a sufficient basis to create the circumstantial scienter needed. The Ninth Circuit has explained that although " 'unusual or suspicious stock sales by corporate insiders may constitute circumstantial evidence of scienter,' " a complaint fails to plead scienter sufficiently when it does not allege that the stock sold constituted a significant percentage of the seller's holdings or that the sales

were inconsistent with the seller's prior trading history. *In re Juniper Networks, Inc.*, 158 F. App'x 899, 901 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)).

The percentages of stock Rayden sold and the monies realized from those sales, although not insignificant, do not rise to levels supporting the implication Plaintiffs seek to make. As one court of appeals has recognized, "by themselves, large numbers do not necessarily create a strong inference of fraud." *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1093. The percentage of stock Rayden sold–17% in the first sale pled and 32% in the second sale pled–does not compare to other instances in which considerably greater percentages created appropriate suspicion.[4] *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002) (holding that although an aggregate sale of 38% of defendants' stock holdings was suspicious, it did not raise a strong inference of fraud); *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001) (affirming dismissal of complaint alleging aggregate sale of 69% of stock shares held by seven defendants and 98% of shares held by another defendant). This is not to say that the percentages at issue here can never constitute sufficient suspicion leading to an inference of scienter. For example, a court of appeals has held that stock sales of 2.1% and 7% of individuals' holdings were sufficient (in conjunction with other circumstances) in light of the fact that the respective sales were significant given the numbers involved: the 2.1% constituted 29 million shares sold for almost $900 million. *Oracle Corp.*, 380 F.3d at 1232 ("[W]here, as

---

[4] Relying on extrinsic material, Defendants argue that contrary to Plaintiffs' calculations, Rayden sold at most 27.5% of his stock holdings during the class period. (Doc. # 40, at 47.)

here, stock sales result in a truly astronomical figure, less weight should be given to the fact that they may represent a small portion of the defendant's holdings.").  But although not a pittance, the money Rayden realized pales in comparison.[5]

Plaintiffs' amended consolidated complaint also fails to speak to Rayden's trading history.  Thus, although at first blush the timing of the sales cited in the pleading may be suspicious, Rayden's timing alone cannot be sufficient circumstantial evidence of scienter when it lacks necessary context.  *Cf. In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1092 ("Context is important, especially for assessing the weight to attach to the timing of the sales." (citing *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 206 (1st Cir. 1999))).  Like many corporate executives, Rayden may well have regularly engaged in such stock sales whenever positive financial projections were made or whenever Tween Brands stock experienced a particular percentage or dollar increase.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1424 (3d Cir. 1997) (discussing stock sales as a form of executive compensation and the danger of drawing a blanket inference of fraudulent intent therefrom).  Absent such information, Plaintiffs' pleading seeks to establish scienter in a vacuum.  *See Am. West Holding Corp.*, 320 F.3d at 938 (stating that "insider stock sales are only suspicious when they are 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information' " (quoting *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989))).  But as the United States Supreme Court has held, "[t]he strength of an inference cannot be decided in a vacuum."  *Tellabs, Inc.*, 127 S. Ct. at 2510.  *See also In re*

---

[5]  Defendants have in fact directed this Court to authority in which sales far exceeded the sums involved here or in which less money was generated in notably shorter periods of time, all without being held suspicious.  *See* Doc. # 40, at 46 n.22.

*Ferro Corp.*, 2007 WL 1691358, at *15 (explaining that "the Court cannot conduct a meaningful analysis" of stock sales because the complaint was devoid of any circumstances surrounding the sales and the seller's historical trading prices," which left the court with "no idea whether the alleged trades were 'normal or routine' ").

Moreover, the amended consolidated complaint relies on but one insider's stock sales, those of Rayden, to establish an asserted scheme allegedly involving three individual defendants, all of whom Plaintiffs aver engaged in the purported securities fraud. This does not assist the establishment of a strong inference of scienter. *See Ronconi*, 253 F.3d 436 ("One insider's . . . sales do not support the 'strong inference' required by the statute where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made."); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1093 (declining to credit as raising an inference of fraud one insider's stock sales where other knowledgeable insiders failed to act in a similar manner).

Taking into account the collective allegations by Plaintiffs targeting scienter–the general statements concerning insider data from company reports and meetings, the number and percentages of stock traded, the fact that apparently only one insider engaged in purportedly suspicious trading, and the lack of context surrounding the timing of the sales (*i.e.*, no trading history)–and taking into account all plausible inferences, including opposing inferences arising therefrom,[6] this Court cannot say under the totality of the circumstances that the amended consolidated complaint raises a strong inference of the necessary or requisite scienter. *George*,

---

[6] The United States Supreme Court has made clear that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc.*, 127 S. Ct. at 2509.

18

426 F.3d at 792 (including scienter as element of § 10(b) securities fraud). The pleading simply does not create a strong inference of recklessness or present actual knowledge on Defendants' part, to the extent either is required. The Court must therefore conclude that Count One of the amended consolidated complaint fails to state a securities violation under the PSLRA's heightened pleadings standards.

Having concluded that the amended consolidated complaint is deficient for the reasons discussed herein, the Court need not and does not address Defendants' remaining (and now moot) arguments targeting Count One of the pleading. This leaves for discussion the second claim set forth in the amended consolidated complaint, the § 20(a) control person claim.

Section 20(a) provides

> Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). Under this portion of the Act, a plaintiff can bring such a claim against any person who directly or indirectly controls any person liable for a predicate securities fraud under the Act, subject to a good faith exception. 15 U.S.C. § 78t(a). Assuming *arguendo* that Plaintiffs can assert a § 20(a) claim against the same defendants named in their predicate § 10(b) claim in Count One, dismissal of the § 20(a) claim in Count Two is nonetheless warranted. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 697 n.4 (6th Cir. 2004) ("Without deciding the question, we note that some authority suggests that a plaintiff may not be able simultaneously to assert both Section 10(b) and Rule 10b-5 claims and Section 20(a) claims against the same defendant.") As Defendants correctly argue, and as the Third Circuit has held, "[t]he lack of any

predicate violation of the Securities Exchange Act of 1934 compels dismissal of control person claims." *California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 159 (3d Cir. 2004). *See also In re Textainer*, No. C-05-0969 MMC, 2006 WL 1328851, at *8 (N.D. Calif. May 15, 2006). Because the Court has already dismissed Plaintiffs' § 10(b) claim, this Court must consequently dismiss Plaintiffs' § 20(a) claim as well. *See In re Kiethley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 906 (N.D. Ohio 2002) (dismissing § 20(a) claim upon dismissal for want of particularity of underlying federal security law claim upon which control person liability claim was based).

### III.  Conclusion

The PSLRA provides that a court shall, on the motion of any defendant, dismiss a complaint if a plaintiff has not met the requirements of sufficiently pleading misleading statements or omissions and state of mind. 15 U.S.C. § 78u-4(b)(3). For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss. (Doc. # 40.) This leaves the issue of whether said dismissal is with or without prejudice.

Because Plaintiffs have already filed one amended complaint without curing the deficiencies of their pleading–and noting that they have not moved to amend their pleading again–the Court concludes that in light of the Sixth Circuit's characterization of the purposes of the PSLRA, dismissal with prejudice as opposed to permitting amendment or dismissal without prejudice is warranted. *See PR Diamonds, Inc.*, 364 F.3d at 698-700. The Court in its discretion therefore **DISMISSES WITH PREJUDICE** Plaintiffs' amended consolidated complaint. *See id.* (discussing appropriateness of dismissal with prejudice); *see also Fidel v. Farley*, 392 F.3d 220, 223, 236 (6th Cir. 2004) (affirming dismissal with prejudice and indicating that "the

PSLRA restricts the scope of Rule 15(a) in the context of securities litigation such that plaintiffs have more limited ability to amend their complaints").[7]

The Clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that not all courts of appeals agree that the PSLRA affects Rule 15(a). *See, e.g., ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55-57 (1st Cir. 2008) (holding that the PSLRA does not constrict the operation of Rule 15(a)).  In light of the circumstances of the instant case and the Sixth Circuit's prior discussion of the PSLRA, however, dismissal with prejudice of Plaintiffs' claims is the appropriate action here.